# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement is made and entered into as of March ____, 2010 (this "Agreement") by and among LOONEY-RICKS-KISS ARCHITECTS, INC., a Tennessee corporation ("Seller") and LRK Inc., a Tennessee corporation ("Purchaser").

RECITALS:

A. Seller is engaged in the business of providing architectural, design and related services to customers in various states (the "Business"); and

B. Seller desires to sell certain of its assets and properties and Purchaser desires to acquire certain of the assets and properties of Seller, on the terms and subject to the conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing recitals, the representations, warranties and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## ARTICLE I
## Definitions

1.1    Previously Defined Terms.  Each term defined in the first paragraph and Recitals shall have the meaning set forth above whenever used herein, unless otherwise expressly provided or unless the context clearly requires otherwise.

1.2    Definitions.  Whenever used herein, the following terms shall have the meanings set forth below unless otherwise expressly provided or unless the context clearly requires otherwise:

"Assumed Liabilities" - As defined in Section 2.4(a).

"Bankruptcy Code" means Title 11 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Tennessee, Western Division.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure currently in effect.

"Benefit Plans" means all employee compensation and benefit plans, agreements, commitments, practices and arrangements of any type (including plans described in or subject to ERISA) offered, maintained or contributed to by Seller for the benefit of current or former employees or directors of Seller.

"Bryan Litigation" means that Litigation styled: *Looney Ricks Kiss Architects, Inc. v. Steve H. Bryan, et al.*, No. 5:07 cv0572, United States District Court for the Western District of Louisiana, Shreveport Division.

"Business" has the meaning set forth in the Recitals.

"Business Day" means any day other than a Saturday or Sunday or other day on which banks in Memphis, Tennessee are authorized or required to be closed.

"Closing" - As defined in Section 3.1.

"Closing Date" - As defined in Section 3.1.

"Contracts" means, with respect to any Seller, any contract, agreement, lease, license, commitment, arrangement or undertaking, written or oral, or other document or instrument to which or by which Seller is a party or otherwise subject or bound or to which or by which any asset, property or right of Seller is subject or bound.

"Designated Contracts" – As defined in subparagraph (iii) of Purchased Assets;

"ERISA" means the Employee Retirement Income Security Act of 1974 as amended.

"Governmental Authority" means the government of the United States or any foreign country or any state or political subdivision thereof and any entity, body or authority exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, including quasi-governmental entities established to perform such functions.

"Indebtedness" means (a) all indebtedness for borrowed money or for the deferred purchase price of property or services (including reimbursement and all other obligations with respect to surety bonds, letters of credit and bankers' acceptances, whether or not matured), including the current portion of such indebtedness, (b) all obligations evidenced by notes, bonds, debentures or similar instruments, (c) all capital lease obligations and (d) all guarantees of any of the items set forth in clauses (a) - (c) above.

"Intellectual Property" means all trade names, trademarks, trademark registrations, trademark applications, logos, service marks, service mark registrations, service mark applications; copyrights, copyright registrations, copyright applications; patent rights (including issued patents, applications, divisions, continuations and continuations-in-part, reissues, patents of addition, utility models and inventors' certificates); licenses with respect to any of the foregoing; trade secrets, proprietary information and know-how; computer software, inventions, inventors' notes, drawings and designs; customer and vendor lists; domain names, website Uniform Record Locator, website contents, email addresses and email files; all photographs, images and marketing materials and rights to use the same; all phone numbers, cell phone numbers, fax numbers and post office boxes; all software and licenses to use software; all other intellectual property and the goodwill associated with any of the foregoing;

2

"Law" means any law, statute, code, regulation, ordinance, rule, Order, or governmental requirement enacted, promulgated, entered into, agreed, imposed or enforced by any Governmental Authority.

"Liabilities" means any obligation or liability (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated and whether due or to become due), including any liability for Taxes.

"Lien" means any mortgage, lien, charge, restriction, pledge, security interest, option, lease or sublease, claim, right of any third party, easement, encroachment or encumbrance or other charges or rights of others of any kind or nature.

"Order" means any decree, order, judgment, writ, award, injunction, stipulation or consent of or by, or settlement agreement with, a Governmental Authority.

"Ordinary Course" means the ordinary course of business of Seller, consistent with past practice and custom (including with respect to quantity and frequency).

"Person" means any natural person, corporation, partnership, limited liability company, joint venture, trust, association or unincorporated entity of any kind.

"Purchase Price" - As defined in Section 2.2.

"Purchased Assets" means all assets, rights and properties owned by Seller on the Closing Date, except for the Retained Assets, including the following:

(i) All deposits and advances, prepaid expenses and other prepaid items of Seller, to the extent the foregoing are transferable to Purchaser, but not including any prepaid Taxes or refund of Taxes;

(ii) All tangible assets, including furniture and office equipment, fixtures, telephone systems, telecopiers, photocopiers, information technology equipment, computer hardware and office supplies, located in Seller's Memphis, Tennessee, Princeton, New Jersey, Celebration, Florida and Baton Rouge, Louisiana office locations;

(iii) All of Seller's right, title and interest in, to or under the (A) Contracts identified in Schedule 2.4; and (B) any executory Contracts entered into by Seller relating to the Business after the date hereof in the Ordinary Course and in compliance with the terms and provisions of this Agreement (collectively, the "Designated Contracts");

(iv) All of Seller's Intellectual Property except for any such property which is the subject matter of the Bryan Litigation;

(v) All permits and licenses of Seller to the extent transferable or assignable to Purchaser; and

3

(vi) All of Seller's operating data and records, including books, records, databases, ledgers, files, documents, instruments, papers, correspondence, memoranda, forms, architectural plans, drawings, specifications, sales and promotional data, customer lists, cost and pricing information, supplier lists, business plans, creative materials, research and development materials, computer files and programs, retrieval programs, and electronic data processing software related to any of the foregoing items or the Business, except for books, records and files located in third party offsite storage locations in Dallas, Texas, Jacksonville, Florida, Nashville, Tennessee and at 88 Union in Memphis, Tennessee.

"Retained Assets" means the following:

(i) all cash and cash equivalents and marketable securities of Seller;

(ii) all accounts receivable owing to Seller on the Closing Date and all unbilled amounts owing to Seller for services provided to customers by Seller prior to the Closing Date;

(iii) all of Seller's right, title and interest in choses in action, claims and causes of action or rights of recovery asserted prior to the Closing Date including the Bryan Litigation;

(iv) all of Seller's rights, title and interest in any real estate leases;

(v) all refunds relating to Tax Returns of Seller;

(vi) all of Seller's rights, claims or causes of action arising under or maintainable under Sections 506(c), 510, 542, 542,, 544,545, 547, 548, 549, 550, 551, 552(b) or 553 of the Bankruptcy Code;

(vii) all Benefit Plans and assets maintained pursuant to or in connection therewith;

(viii) All tangible assets, including furniture and office equipment, fixtures, telephone systems, telecopiers, photocopiers, information technology equipment, computer hardware and office supplies located in Seller's leased space in Dallas, Texas, Jacksonville, Florida, Nashville, Tennessee and in third party offsite storage locations in Houston, Texas and Princeton, New Jersey;

(ix) Books, records and files located in third party offsite storage locations in Dallas, Texas, Jacksonville, Florida, Nashville, Tennessee and at 88 Union Avenue in Memphis, Tennessee; and

(x) Seller's corporate seal, minute books and stock record books.

"Retained Liabilities" means all Liabilities of Seller other than the Assumed Liabilities.

"Sale Motion" – As defined in Section 4.1(a).

"Sale Order" – As defined in Section 4.1(a).

"Scheduled Closing Date" - As defined in Section 3.1.

"Tax Return" means any report, return or other information required to be supplied to a Governmental Authority in connection with any Taxes.

"Taxes" means all taxes, charges, fees, duties (including custom duties), levies or other assessments, including income, gross receipts, net proceeds, capital gains, ad valorem, turnover, real and personal property (tangible and intangible), sales, use, franchise, excise, value added, stamp, leasing, lease, user, transfer, fuel, excess profits, occupational, interest equalization, windfall profits, license, payroll, environmental, capital stock, disability, severance, employee's income withholding, other withholding unemployment and Social Security taxes, which are imposed by any Governmental Authority, and such term shall include any interest, penalties or additions to tax attributable thereto.

1.3   Interpretation. Unless the context of this Agreement otherwise requires, (a) words of any gender shall be deemed to include each other gender, (b) words using the singular or plural number shall also include the plural or singular number, respectively, (c) references to "hereof", "herein", "hereby" and similar terms shall refer to this entire Agreement, (d) all references in this Agreement to Articles, Sections and Exhibits shall mean and refer to Articles, Sections and Exhibits of this Agreement, (e) all references to statutes and related regulations shall include all amendments of the same and any successor or replacement statutes and regulations, and (f) references to any Person shall be deemed to mean and include the successors and permitted assigns of such Person (or, in the case of a Governmental Authority, Persons succeeding to the relevant functions of such Person).

## ARTICLE II
## Purchase and Sale, Purchase Price, and Other Related Matters

2.1   Purchase and Sale. Upon the terms and subject to the conditions of this Agreement, at the Closing on the Closing Date, Seller shall sell, assign, convey, transfer and deliver to Purchaser, and Purchaser shall acquire from Seller, the Purchased Assets, free and clear of any Liens.

2.2   Purchase Price. The purchase price (the "Purchase Price") payable by Purchaser to Seller for the Purchased Assets shall be the following:

(a)   the sum of $25,000; and

(b)   the assumption by Purchaser at the Closing of the Assumed Liabilities.

2.3   Payment of the Purchase Price. The Purchase Price shall be payable on the date which is the fifth Business Day after the entry of an order by the Court approving this Agreement and the sale transaction contemplated hereby.

5

2.4   Assumed Liabilities. (a) As additional consideration for the purchase of the Purchased Assets, Purchaser shall, at the Closing, by its execution and delivery of an Assumption Agreement in a form reasonably satisfactory to Seller and Purchaser, assume, agree to perform, and in due course pay and discharge, only the following obligations and liabilities of Seller relating to the Business (collectively, the "Assumed Liabilities"):

(i)   The obligations and liabilities of Seller arising after the Closing Date under Contracts described on Schedule 2.4(a); and

(ii)   executory Contracts entered into by Seller relating to the Business after the date hereof in compliance with the terms and provisions of this Agreement;

provided, however, Purchaser is not assuming any Liabilities of Seller with respect to any Contracts not assigned to Purchaser.

(b)   Purchaser shall not assume or pay any, and Seller shall continue to be responsible for each Liability of Seller whether or not relating to the Business, not expressly assumed by Purchaser in Section 2.4(a). Specifically, without limiting the foregoing, Purchaser shall not assume and shall in no way be responsible for any Liabilities of Seller whatsoever associated with the Business or the Purchased Assets including:

(i)   any Indebtedness of Seller;

(ii)   any claim, action, suit or proceeding pending as of the Closing Date, or any subsequent claim, action, suit or proceeding arising out of or relating to (A) such pending matters, (B) any other event occurring on or prior to the Closing Date, or (C) resulting from Seller's conduct of the Business, on or prior to the Closing Date;

(iii)   any Liability arising out of or relating to the Retained Assets;

(iv)   any deferred Tax liabilities or any other Liability of Seller for Taxes for any periods prior to or subsequent to the Closing whether or not relating to the Business;

(v)   any Liability arising from claims, proceedings or causes of action resulting from property damage or personal injuries caused by services rendered by Seller on or prior to the Closing Date;

(vi)   any Liability arising from guarantees, warranty claims or other Contract terms with respect to services rendered by Seller on or prior to the Closing Date;

(vii)   any Liability to any current or former employee of Seller, whether for wages, vacation pay, payroll, severance, pension, retirement, equity or other benefits;

(viii)   any Liability arising out of or related to any Benefit Plan;

(ix)   any Contract of Seller which is not a Designated Contract including, but not limited to, those Contracts identified in Schedule 2.4(b);

6

(x) any amounts payable to equity holders or former equity holders of Seller; and

(xi) any other Retained Liability.

2.5 <u>Transfer Taxes</u>. Purchaser shall pay any and all registration, licensing, transfer or similar taxes or fees (other than income and sales tax) imposed by any Governmental Authority, which arise out of the transfer of any of the Purchased Assets to Purchaser and all out-of-pocket costs incurred in connection with the transfer to Purchaser of titled assets constituting Purchased Assets.

## ARTICLE III
## <u>Closing and Closing Date Deliveries</u>

3.1 <u>Closing</u>. The term "<u>Closing</u>" as used herein shall refer to the actual conveyance, transfer, assignment and delivery of the Purchased Assets to Purchaser in exchange for the payment delivered to Seller pursuant to <u>Section 2.3</u> of this Agreement. The Closing shall take place at the offices of Martin, Tate, Morrow & Marston, P.C., 6410 Poplar Avenue, Suite 1000, Memphis, Tennessee 38119 at 10:00 a.m. local time, on the later of March 31, 2010 (the "<u>Scheduled Closing Date</u>") or the fifth Business Day following the date upon which all of the conditions precedent set forth in <u>Articles VI</u> and <u>VII</u> are satisfied or waived by the appropriate party hereto, subject to <u>Article VIII</u>, or at such other place and time or on such other date as is mutually agreed to in writing by Seller and Purchaser ("<u>Closing Date</u>").

3.2 <u>Closing Deliveries by Seller</u>. At the Closing, Seller shall deliver to Purchaser:

(a) a Bill of Sale and Assignment Agreement, in a form reasonably satisfactory to Purchaser and Seller, as executed by Seller; and all such other documents and instruments of sale, assignment, conveyance and transfer, as Purchaser may deem necessary or desirable;

(b) All documents necessary to amend Seller's name to not include "Looney" "Ricks" or "Kiss" or any derivative thereof or any other similar name, which shall be duly executed and in a form that Purchaser may file in the state in which Seller is incorporated and in each other state in which Seller is qualified to transact business; and

(c) Such other documents as Purchaser may reasonably request to carry out the purposes of this Agreement.

3.3 <u>Closing Deliveries by Purchaser</u>. At the Closing, Purchaser shall deliver to Seller:

(a) The payment to be delivered by Purchaser pursuant to <u>Section 2.3</u>;

(b) A certificate of the Secretary or an Assistant Secretary of Purchaser certifying as to: (i) the certificate of incorporation of Purchaser, as certified by the Secretary of State of the State of Tennessee not earlier than ten (10) days prior to the Closing Date; (ii) the

7

by-laws, as amended, of Purchaser; (iii) resolutions of the Board of Directors of Purchaser authorizing and approving the execution, delivery and performance by Purchaser any agreements, instruments, certificates or other documents executed by Purchaser pursuant to this Agreement; and (iv) the incumbency and signatures of the officers of Purchaser;

(c) The Assumption Agreement executed by Purchaser reflecting the assumption of the liabilities set forth in Section 2.4(a); and

(d) Such other documents as Seller may reasonably request to carry out the purposes of this Agreement.

3.4 Cooperation. Seller and Purchaser shall, on request, on and after the Closing Date, cooperate with one another by furnishing any additional information, executing and delivering any additional documents and/or instruments and doing any and all such other things as may be reasonably required by the parties to consummate or otherwise implement the transactions contemplated by this Agreement.

## ARTICLE IV
## Pre-Closing Filings

4.1 Bankruptcy Court Filings.

(a) Within three (3) Business Days after execution of this Agreement, the Seller shall file with the Bankruptcy Court a motion and supporting papers in form and substance reasonable satisfactory to Purchaser (the "Sale Motion") seeking the Bankruptcy Court's entry of an order authorizing and approving the sale of the Acquired Assets to Purchaser under Section 363 of the Bankruptcy Code, in form reasonably satisfactory to Purchaser and meeting the conditions set forth in Section 4.1(b) below ("Sale Order");

(b) The Seller shall use its reasonable best efforts to obtain the Bankruptcy Court's entry of a Sale Order on or before April 1, 2010, approving of the transactions contemplated herein. The Sale Order shall be in form and substance reasonably satisfactory to the Purchaser and shall provide, without limitation, that:

(i) as of the Closing Date, the transactions contemplated by this Agreement will affect a legal, valid, enforceable and effective sale and transfer of the Purchased Assets to Purchaser and shall vest Purchaser with title to the Purchased Assets being purchased free and clear of all Liens other than as permitted hereby. The Sale Order shall expressly provide that Purchaser acquires the Purchased Assets being purchased free and clear of any and all potential successor liability claims of any kind;

(ii) the consideration provided by the Purchaser pursuant to this Agreement constitutes reasonably equivalent value and fair consideration for the Purchased Assets so purchased;

(iii) Purchaser is a good faith purchaser of the Purchased Assets so purchased, as that term is used in Section 363(m) of the Bankruptcy Code, and is entitled to the protections provided by such Section;

8

(iv) As of the Closing Date, the Designated Contracts will have been assigned to the Purchaser in accordance with Sections 365 and 105 of the Bankruptcy Code; and

(v) The ten (10) day automatic stay provisions of Section 6006(d) and 6004(g) of the Bankruptcy Rules are thereby waived.

(c) The Seller shall take such steps necessary to schedule the hearing on the Sale Motion on reasonable notice sufficient to satisfy the conditions set forth herein, the requirements of the Bankruptcy Code and related Bankruptcy Rules. The Seller shall give notice to such Persons and shall take such actions as are necessary to provide that the Sale Order is enforceable in accordance with the terms described herein.

## ARTICLE V
## Pre-Closing Covenants

5.1 Maintenance of Business. Pending the Closing, Seller shall use its reasonable best efforts to preserve and protect the goodwill, rights, properties and assets of its Business, to keep available to the Business and Purchaser the services of its employees, and to preserve and protect Seller's relationships with its employees, creditors, suppliers, customers and others having business relationships with it.

## ARTICLE VI
## Conditions to Closing Applicable to Purchaser

The obligations of Purchaser hereunder (including the obligation of Purchaser to close the transactions herein contemplated) are subject to the following conditions precedent:

6.1 No Termination. Neither Purchaser nor Seller shall have terminated this Agreement pursuant to Section 8.1.

6.2 Entry of Sale Order. The Bankruptcy Court shall have entered the Sale Order.

6.3 All Necessary Documents. All proceedings to be taken in connection with the consummation of the transactions contemplated by this Agreement and all documents incident thereto, shall be reasonably satisfactory in form and substance to Purchaser, and Purchaser shall have received copies of such documents as Purchaser may reasonably request in connection therewith, including those documents to be delivered pursuant to Section 3.2.

## ARTICLE VII
## Conditions to Closing Applicable to Seller

The obligations of Seller hereunder (including the obligation of Seller to close the transactions herein contemplated) are subject to the following conditions precedent:

7.1 No Termination. Neither Purchaser nor Seller shall have terminated this Agreement pursuant to Section 8.1.

9

7.2     Entry of Sale Order.  The Bankruptcy Court shall have entered the Sale Order.

7.3     All Necessary Documents.  All proceedings to be taken in connection with the consummation of the transactions contemplated by this Agreement, and all documents incident thereto, shall be reasonably satisfactory in form and substance to Seller, and Seller shall have received copies of such documents as it may reasonably request in connection therewith, including those documents to be delivered pursuant to Section 3.3.

## ARTICLE VIII
## Termination

8.1     Termination.  This Agreement may be terminated at any time prior to the Closing only as follows:

(a)     by mutual consent of Purchaser and Seller;

(b)     by Purchaser or by Seller, if at or before the Closing any condition set forth herein for the benefit of Purchaser or Seller, respectively, shall not have been timely met or cannot be timely met; provided, the party seeking to terminate is not in breach of or default under this Agreement; or

(c)     by Purchaser if the Closing of the transactions contemplated by this Agreement shall not have occurred on or before April 15, 2010, or such later date as may have been agreed upon in writing by the parties hereto;

If either party terminates this Agreement pursuant to this Article VIII, all rights and obligations of Seller and Purchaser hereunder shall terminate without any liability of either party.

## ARTICLE IX
## Certain Other Agreements

9.1     Post Closing Access to Records.  Each party agrees to provide the other with access to all relevant documents and other information which may be needed by such other party for purposes of preparing tax returns or responding to an audit by any Governmental Authority or for any other reasonable purpose. Such access will be during normal business hours and subject to reasonable time limitations and at the expense of the requesting party.

9.2     Transferred Contracts.  The Debtor shall assign to Purchaser the Designated Contracts.  Purchaser shall have the option to add or delete contracts from the Designated Contracts, which option may be exercisable at any time prior to the Closing; provided, however, that any assignment of a Designated Contract must meet the requirements of the Bankruptcy Code and the Bankruptcy Rules.

9.3     Use of Name.  After the Closing, Seller shall not use the name "Looney" "Ricks" or "Kiss" or any derivatives thereof or any similar name to identify itself.

# ARTICLE X
## Miscellaneous

10.1 <u>Cost and Expenses</u>.  Purchaser will pay its own costs and expenses (including attorneys' fees, accountants' fees and other professional fees and expenses) in connection with the negotiation, preparation, execution and delivery of this Agreement and the consummation of the purchase of the Purchased Assets and the other transactions contemplated by this Agreement (except as otherwise specifically provided for herein); and Seller will pay its own costs and expenses (including attorneys' fees, accountants' fees and other professional fees and expenses) in connection with the negotiation, preparation, execution and delivery of this Agreement and the consummation of the sale of the Purchased Assets and the other transactions contemplated by this Agreement (except as otherwise specifically provided for herein).

10.2 <u>Entire Agreement</u>.  The Schedules and the Exhibits referenced in this Agreement are incorporated into this Agreement and together contain the entire agreement between the parties hereto with respect to the transactions contemplated hereunder.

10.3 <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

10.4 <u>Assignment, Successors and Assigns</u>.  The respective rights and obligations of the parties hereto shall not be assignable without the prior written consent of the other parties.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and permitted assigns.

10.5 <u>Savings Clause</u>.  If any provision hereof shall be held invalid or unenforceable by any court of competent jurisdiction or as a result of future legislative action, such holding or action shall be strictly construed and shall not affect the validity or effect of any other provision hereof.

10.6 <u>Headings</u>.  The captions of the various Articles and Sections of this Agreement have been inserted only for convenience of reference and shall not be deemed to modify, explain, enlarge or restrict any of the provisions of this Agreement.

10.7 <u>Risk of Loss</u>.  Risk of loss, damage or destruction to the Purchased Assets shall be upon Seller until the Closing, and shall thereafter be upon Purchaser.

10.8 <u>Governing Law</u>.  The validity, interpretation and effect of this Agreement shall be governed exclusively by the laws of the State of Tennessee, excluding the "conflict of laws" rules thereof.

10.9 <u>Notices</u>.  (a) All notices, requests, demands and other communications under this Agreement shall be in writing and delivered in person, or sent by reputable overnight delivery service and properly addressed as follows:

<u>To Purchaser:</u>

LRK Inc.

_____
_____

<u>With a copy to</u>:

Martin, Tate, Morrow & Marston, P.C.
6410 Poplar Avenue, Suite 1000
Memphis, TN 38119
  Attention: Robert E. Orians

<u>To Seller</u>:

Looney-Ricks-Kiss Architects, Inc.
175 Toyota Place
Memphis, TN 38103
  Attention: Elaine Covin

<u>With a copy to</u>:

Harris, Shelton, Hanover, Walsh, PLLC
2700 One Commerce Square
Memphis, TN 38103
  Attention: John L. Ryder

  (b) Any party may from time to time change its address for the purpose of notices to that party by a similar notice specifying a new address, but no such change shall be deemed to have been given until it is actually received by the party sought to be charged with its contents.

  (c) All notices and other communications required or permitted under this Agreement which are addressed as provided in this <u>Section 10.9</u> if delivered personally or by courier, shall be effective upon delivery.

  10.10 <u>No Third-Party Beneficiary</u>. This Agreement is being entered into solely for the benefit of the parties hereto, and the parties do not intend that any employee or any other Person shall be a third-party beneficiary of the covenants by either Seller or Purchaser contained in this Agreement.

[signature page follows]

IN WITNESS WHEREOF, the parties hereto have executed this Asset Purchase Agreement as of the date first written above.

SELLER:                                LOONEY-RICKS-KISS ARCHITECTS, INC.

By: _____

Title: _____

PURCHASER:                             LRK Inc.

By: _____

Title: _____

T:\Oriansb\lrk\Asset Purchase Agreement 030410rev.doc

| Schedule 2.4(a) | |
|---|---|
| **Project** | **Client** |
| 01.08067.00  Salvaggio-Poplar Pike at Moore Road | Salvaggio Enterprises, LLC |
| 01.08067.01  Salvaggio-Brownstone Office Building | Salvaggio Enterprises, LLC |
| 01.09148.00  NCRM - 2009 Program Management Renov | National Civil Rights Museum |
| 01.10007.00  MAAC/Corporate Office Ext. Renovations | Mid-America Apartment Communities |
| 02.02012.00  First TN - Site Selections | First Horizon Bank |
| 01.09080.00  Memphis Cook Convention Center | City of Memphis |
| 01.09085.00  CSC - Lowenstein Commercial | Court Square Associates, LLC |
| 01.09086.00  Buckingham/Columbus-IN/MF Design | Buckingham Companies |
| 01.09124.00  Buckingham/North of South MU Development | Buckingham Companies |
| 01.10015.00  Buckingham/Fall Creek/YMCA Site | Buckingham Companies |
| 01.10013.00  MedVet Memphis, LLC Design Services | MedVet Memphis, LLC |
| 01.10020.00  Flaherty-Collins/IN/Lugar Tower Tax Credit | Flaherty & Collins Properties |
| 01.09083.01  New Amherst - Parking Structure | Plan Master Construction & Development |
| 01.10018.00  Civil Rights/Triangle Noir/Memphis College of Art | Hyde Family Foundations |
| 01.00114.10  Summerset @ Frick Park | MRRC Development Associates |
| 01.07261.00  Wellsgate - Oxford, MS | Dan Walker Associates, Inc. |
| 01.08029.00  Williams Residence | Keith & Sharon Williams |
| 01.08029.01  Williams Residence Additional Services | Keith & Sharon Williams |
| 01.09128.00  Clark & Clark - Miscellaneous | Clark & Clark, LLC |
| 01.09131.xx  WoodGrove | Clark & Clark, LLC |
| 01.09132.xx  Enclave Phase III | Clark & Clark, LLC |
| 01.09133.xx  Enclave Phase II | Clark & Clark, LLC |
| 01.09145.00  Welsch Residence | Welsch, Chris & Elise |
| 01.08183.00  Bayside Park | Telesis Corporation |
| 01.09020.00  Mednikow Renovations & Additions | Mendikow, Jay & Elizabeth |
| 01.09024.00  Summerset at Frick Park Design Code | Rubinoff Company |
| 01.09039.00  Prillaman Renovation | Prillaman, Mr. and Mrs. Jim |
| 01.09054.00  Wiener Residence | Wiener, Rochelle and Ed |
| 01.09054.01  Wiener Residence ASA #1 | Wiener, Rochelle and Ed |
| 01.09073.00  Forest Brook | Clark & Clark, LLC |
| 01.09076.00  Park Place West | Columbia Development Co., LLC |
| 01.09079.00  Steve Medlin Lake House | Steve Medlin |
| 01.09089.00  Haidak Renovation | Haidak, Dr. Paul |
| 01.09109.00  Medlin Residence, Palmetto Bluff, Lot108 | Steve Medlin |
| 01.09111.00  Ali Residence | Ali, Mir |
| 01.09118.00  Washington Gates, Lot 14 | Boyle Investment Company |
| 01.09120.00  Neshoba Grove Vesta Home 2010 | Landon Homes |
| 01.09120.01  Vesta Show Home Interior Elevations | Salma Kahn & Nauman Qureshi |
| 01.09121.00  Magee Residence | Magee, Gretchen and Steven |
| 01.09125.00  Wray Renovation | Wray, Cecil and Lacy |
| 01.09137.00  Town of Collierville - Restroom Cabanas | Town of Collierville - |
| 01.09146.00  Feild Renovation | Feild, John |
| 01.10009.00  Plan Sale 96031B1 Modification | The Hankin Group |
| 01.10010.00  Dobbs-Floyd Residence | Floyd, Kirby |
| 01.10012.00  Old Towne | Telesis Corporation |
| 01.10014.00  Washington Gates, Lot 2 | Dickens. Doug |
| 03.98024.05  Cambridge Homes Plan Review | Cambridge Homes |
| 03.98024.32  D&N Homes Design Review | D&N Homes |

| Schedule 2.4(a) | |
|---|---|
| **Project** | **Client** |
| 0S.00011.BH thru S9.93082.LR - Plan Sales | Various |
| 01.08086.00  Ultra:  DD thru CA | 115 Union, LLC |
| 01.08187.03  Nuvasive Memphis | NuVasive |
| 01.09028.00  One Memphis Place, Suite 900 | CB Richard Ellis, Memphis/LLC |
| 01.09032.00  Oak Court Office Building, Suite 253 | Oak Court Management Office (Dorton) |
| 01.09074.01  MAAC/FL/Coral Sq-Leasing Clubhouse Int | Mid-America Apartment Communities |
| 01.09135.01  MAAC/Palm Harbor/Park Crest/Leasing Club | Mid-America Apartment Communities |
| 01.09093.00  One Commerce Square Garage Tenant | Commercial Alliance Management, LLC |
| 01.09098.00  One Commerce Square - Misc. Interior | Commercial Alliance Management, LLC |
| 01.09108.00  OCS - Leasing Center & Garage Elevator | Commercial Alliance Management, LLC |
| 01.09108.05  OCS - Field Verification | Commercial Alliance Management, LLC |
| 01.09114.00  One Memphis Place - Suite 850 | CB Richard Ellis, Memphis/LLC |
| 01.09139.00  One Memphis Place - Suite 275 | CB Richard Ellis, Memphis/LLC |
| 01.09140.00  One Memphis Place - Suite 250 | CB Richard Ellis, Memphis/LLC |
| 01.09141.00  One Memphis Place - Suite 1325 | CB Richard Ellis, Memphis/LLC |
| 01.09147.00  Robertson Residence | Robertson, Beverly & Howard |
| 01.09149.00  Greater Memphis Chamber - Presentation | Parkway Properties |
| 01.09154.00  One Memphis Place - Suite 850 | CB Richard Ellis, Memphis/LLC |
| 01.10001.00  Oak Court Office Building Suite 260 | Oak Court Management Office (Dorton) |
| 01.10004.00  5350 Poplar, Suite 875 (M&F Bus. Cred) | CB Richard Ellis, Memphis/LLC |
| 01.10006.00  One Memphis Place, Suite 1250 Expansion | CB Richard Ellis, Memphis/LLC |
| 01.09062.00  Columbus, IN Housing EGD | Buckingham Companies |
| 01.09116.00  The Cole (Columbus) Interiors | Buckingham Companies |
| 01.09124.01  North of South-Environmental Graphics | Buckingham Companies |
| 01.10016.00  Carlisle Office | Carlisle Corporation |
| 01.10011.00  5350 Poplar, Suite 450 - Dr. Callahan CD | CB Richard Ellis, Memphis/LLC |
| 01.10019.00  Madison Humphreys Center | Fogelman Properties |
| 01.08129.00  UM Urban Design Consultancy | University of Memphis |
| 01.09023.00  Mud Island River Park Land Use Plan | Pickering Firm |
| 01.09103.00  Raleigh Springs Mall | City of Memphis |
| 01.09104.00  Shelby Farms Park Conservation Easement | Land Trust for Tennessee |
| 01.09136.00  Jackson, TN - East Jackson | City of Jackson |
| 02.09007.00  Pensacola CRA Master Plan Update | Community Redevelopment Agency |
| 03.02055.00  #03-629E Metuchen Plaza Associates LLC | Borough of Metuchen - Bill Boerth |
| 03.03001.xx  Borough of Metuchen individual plan reviews | Borough of Metuchen - Bill Boerth |
| 03.04001.02  #04-647 412 Main Street B 121 L 10 & 19 | Borough of Metuchen - Bill Boerth |
| 03.04001.44  #04-684E 220 Amboy Avenue | Borough of Metuchen - Bill Boerth |
| 03.04016.04  Rushbrook Review - 44 Cradlerock Rd | Rushbrook Homeowner's Assoc. |
| 03.04016.05  Rushbrook - Lot 105 Katie's Pond Rd | Rushbrook Homeowner's Assoc. |
| 03.05001.30  #06-727E 700 Middlesex Avenue | Borough of Metuchen - Bill Boerth |
| 03.05008.00  New Daleville Design Review | Daleville Associates, LP |
| 03.06001.xx  Borough of Metuchen plan reviews | Borough of Metuchen - Bill Boerth |
| 03.06005.01  LaGrange Town Center | Rieger Homes, Inc., |
| 03.07001.xx  Borough of Metuchen plan reviews | Borough of Metuchen - Bill Boerth |
| 03.07025.00  Metuchen Smart Future Planning Grant | Borough of Metuchen - Bill Boerth |
| 03.08001.xx  Borough of Metuchen plan reviews | Borough of Metuchen - Bill Boerth |
| 03.08010.02  Millbrook - Silo Ridge | Millbrook Ventures, LLC |
| 03.08024.01  Richmond Village, Ontario | Mattamy Development Corporation |
| 03.08024.03  Richmond Village Meetings (ASA #2) | Mattamy Development Corporation |

| Schedule 2.4(a) | |
|---|---|
| **Project** | **Client** |
| 03.08024.04 Richmond Village, ASA #3 | Mattamy Development Corporation |
| 03.08027.03 Carvel - Meetings | Durst Organization, Inc. |
| 03.08033.00 Farkas Tract, Calgary, Alberta | Mattamy Development Corporation |
| 03.08035.02 Woodland Cove Additional Services | Halstead Bay Development, LLC |
| 03.09001.xx Borough of Metuchen plan reviews | Borough of Metuchen - Bill Boerth |
| 03.09003.00 West Windsor Litigation | InterCap Holdings, LLC |
| 03.09009.00 Todd Creek Village | Equinox Land Group |
| 03.09009.01 Todd Creek Village ASA #1 | Equinox Land Group |
| 03.09010.00 Overland Park - 191st & Stateline | MD Management |
| 03.09013.00 Richboro Village Visioning | Dreher Group |
| 03.09013.01 Richboro Village ASA#1 | Richboro CD Partners, LP |
| 03.10001.00 Borough of Metuchen Planner Svc 2010 | Borough of Metuchen - Bill Boerth |
| 03.10001.xx Borough of Metuchen plan reviews | Borough of Metuchen - Bill Boerth |
| 03.10002.00 Garwood, NJ | NJ Transit |
| 03.10003.00 Izarra Project, Chile | Irarrazabal Bravo Arquitectos |
| 04.04017.02 The Lake Club-Design Review Services | LWR Communities, LLC |
| 04.07037.03 Baldwin Park Town Arch Consult/Add'l Mon | Baldwin Park Development Company |
| 04.08016.04 Kennedy Residence CA | International Speedway Corporation |
| 04.09014.01 GDC/Atlanta/The TUX, Retail Center | GDC Properties - Mike Mulhall |
| 04.09014.04 GDC/Atlanta/The TUX, CD Changes | GDC Properties - Mike Mulhall |
| 04.09020.xx Mattamy Baldwin Park Townhomes | Mattamy Development Corporation |
| 04.09024.00 Trammell Crow/GA/Jekyll Island | Trammel Crow |
| 04.09029.00 VMS/Louisiana/Phase I - Building Workshp | Village of Magnolia Square, LLC |
| 04.09032.00 Virginia Beach - Archit & Planning | Kempsville Presbyterian Church |
| 04.09033.00 Eco Town Siewierz, Poland | New Broad Street Management |
| 04.09034.00 Bruce-Dantin/Active Adult Residential De | Bruce-Dantin |
| 04.09038.01 Lakeland Heights Village ASA #1 | GGP - Bridgeland, L.P. |
| 04.09039.00 Longwood Farm | Mosely Law Firm, LLC |
| 04.09040.00 Celebration Town Architect - 2010 | Celebration Company |
| 04.09041.00 Cameron Square | The Hankin Group |
| 04.09042.00 Disney Golden Oak Clubhouse Design Arch | Disney Resort Real Estate Development |
| 04.09045.00 Union Square Townhomes | Fourth River Development, LLC |
| 04.09047.00 Rouzan Sweetbriar Neighborhood | JTS Interests |
| 04.10001.00 AECOM/Maitland/West Side Redevelopment | AECOM |
| 04.10002.00 Blue Green/Dennisport/Soundings Phase 2A | Blue Green Corporation |
| 04.10005.00 McIntosh Residence, Celebration | McIntosh, Mark and Beth |
| 04.10007.00 MDG Dev/Miami Gardens Town Center | MDG Development Group |
| 07.07019.05 JTS/Rouzan - Block M | JTS Interests |
| 07.07019.06 JTS/Rouzan - Village Center Details | JTS Interests |
| 07.07019.08 JTS/Rouzan Library | JTS Interests |
| 08.08014.00 Disney Flamingo Crossings EGD | Disney Resort Real Estate Development |
| 04.10004.00 Rouzan/Mimosa District Residential Mods | JTS Interests |

Schedule 2.4(b)

| Project | Client |
|---|---|
| 01.03170.10 Gables/Austin/Park Plaza Energy Grn Bldg | Gables Residential |
| 01.03170.13 Gables/Austin/Park Plaza LEED Inv | Gables Residential |
| 01.03170.15 Gables/Austin/Park Plaza/Interior Coord | Gables Residential |
| 01.03170.17 Gables/Austin/Park Plaza/Pool Coord | Gables Residential |
| 01.03170.18 Gables/Austin/Park Plaza Lighting Cnslt | Gables Residential |
| 01.03170.20 Gables/Austin/Park Plaza/Extended CA | Gables Residential |
| 01.03170.21 Gables/Austin/Park Plaza/Courtyard Rev | Gables Residential |
| 01.06033.00 SWTCC - JV Fisher & Arnold | Fisher & Arnold, Inc. |
| 01.06136.00 Bozzuto/Greenbelt, MD/Maple Ridge | Bozzuto Group/Bozzuto & Associates |
| 01.06202.08 Gables/Pressler/Austin Energy Green Buil | Gables Residential |
| 01.06260.01 Barboro Alley Flats (100 S Main - Apts) | Greenhat Partners |
| 01.06264.00 UDR/Dallas/Belmont & Fitzhugh | United Dominion |
| 01.07036.06 Whitehaven DL Station CD thru CA | Department of Finance and Administration |
| 01.08027.00 FedEx Family House | Methodist LeBonheur Healthcare |
| 01.08040.04 The Lex - Bid/Negotiation/CA | Buckingham Companies |
| 01.08054.00 Fort Drum Housing Phase II | Actus Lend Lease |
| 01.08100.00 Methodist Poplar Ave. Conceptual MP | Methodist Healthcare |
| 01.08125.00 Cypress/Denargo Market, Phase I | Cypress Real Estate Advisors, Inc. |
| 01.08169.00 UDR/Addison/Vitruvian Park Phs I North | United Dominion |
| 01.08169.01 UDR/Vitruvian Park/EGD Blocks 101-102 | United Dominion |
| 01.08169.02 UDR/Vitruvian Park/Block 102 Int. Design | United Dominion |
| 01.08169.04 UDR/Vitruvian Park ASA03 Courtyard Ameni | United Dominion |
| 01.08169.08 UDR/Addison/Vitruvian Prk, Lighting CSLT | United Dominion |
| 01.08169.09 UDR/Addison/Vitruvian Prk, Bldg Envelope | United Dominion |
| 01.09012.10 Place Properties/San Antonio/UTSA - CA | Place Properties |
| 01.09013.01 UDR/Vitruvian Park/Signage Master Plan | United Dominion |
| 01.09029.00 E. Ritter - Communications Building | E. Ritter & Company |
| 01.09029.01 E. Ritter - Historic Preservation Cert | E. Ritter & Company |
| 01.09029.02 E. Ritter - Civil Engineer | E. Ritter & Company |
| 01.09074.01 MAAC/FL/Coral Sq-Leasing Clubhouse Int/Ext | Mid-America Apartment Communities |
| 01.09074.02 MAAC/FL/Coral Sq-Pool Clubhouse Int/Ext | Mid-America Apartment Communities |
| 01.09074.03 MAAC/FL/Coral Sq-Leasing Clubhouse Ext | Mid-America Apartment Communities |
| 01.09082.00 I-Bank 21st Floor Expansion | Independent Bank |
| 01.09090.00 Helena Chemical - 1st Floor Expansion | Helena Chemical Company |
| 01.09135.01 MAAC/Palm Harbor/Park Crest/Leasing Club | Mid-America Apartment Communities |
| 01.09151.00 First TN - Nashville Offices - 511 Union | First Horizon Bank |
| 01.09152.00 Huffines/Arlington/Viridian Planning | HC LOBF Arlington LLC |
| 02.05003.06 Western Mental Health Ins  SD's-Closeout | LRK/HBG, A Joint Venture |
| 02.05003.19 WMHI - LEED Consulting, Documenation | LRK/HBG, A Joint Venture |
| 02.05003.44 WMHI - Final Coordination of F&E | LRK/HBG, A Joint Venture |
| 02.05003.44 WMHI ASA 44, Flagpoles/Signage Addition | LRK/HBG, A Joint Venture |
| 02.07007.07 Eddy Street Commons: Multifamily | Buckingham Companies |
| 02.07007.10 Eddy Street Commons: Corporate | Kite Realty Group |
| 02.07007.21 Eddy Street Commons-Procurement/Install | Buckingham Companies |
| 02.07007.34 The Foundry - BN/CA | Buckingham Companies |
| 02.09024.00 Toebben - Rivers Pointe Estates | Toebben Companies |
| 03.00025.06 Design Review Svc Cherry Hill Village | Livonia Builders |
| 03.00025.07 Design Review Svc CHV-Breault Homes | Breault Homes |
| 03.00025.09 CHV - Van Belle Builders Inc. | Van Belle Builders, Inc. |
| 03.00025.10 CHV Design Review - Tom Casari | |
| 03.00025.11 CHV Design Services - Millcreek | Millcreek Building Company |
| 09.08001.15 Cypress/LA Katrina, HANO - CA | Cypress Realty Partners, LLC |
| 09.08001.30 Cypress/LA Katrina, CA - LASB-MODS | Cypress Realty Partners, LLC |
| 09.08001.48 Cypress/LA Katrina, Ext CA, Nov-Mar 2010 | Cypress Realty Partners, LLC |