## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

In re:

LOONEY RICKS KISS ARCHITECTS, INC.,                    Case No. 10-22034-JDL
                                                       Chapter 11

          Debtor.

## AMENDED DISCLOSURE STATEMENT
## FOR
## LOONEY RICKS KISS ARCHITECTS, INC.

Dated: August 26, 2010

Respectfully submitted,

HARRIS SHELTON HANOVER WALSH
John L. Ryder   (Tenn. Disc. No. 08258)
Steven N. Douglass (Tenn. Disc. No. 09770)
2700 One Commerce Square
Memphis, Tennessee 38103-2555

Counsel to the Debtor and Debtor-in-Possession

# I.

# <u>INTRODUCTION</u>

The Debtor, LOONEY RICKS KISS ARCHITECTS, INC (the "Debtor"), provides this Amended Disclosure Statement pursuant to 11 U.S.C. § 1125 to all known creditors and interest holders to disclose information deemed by the Debtor to be material, important and necessary for its creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance of the Plan of Liquidation (the "Plan"). Neither the Debtor nor the Bankruptcy Court has authorized the communication of any information about the Plan other than the information contained in this Disclosure Statement and the related materials transmitted herewith or filed with the Bankruptcy Court.  No solicitation of votes on the Plan from a Creditor in an Impaired Class or Interest holder may be made, unless, at the time of or before such solicitation, this Disclosure Statement, in the form approved by the Bankruptcy Court for dissemination, is transmitted to such Persons.

**NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS, VALUE OF PROPERTY, OR THE PLAN) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISIONS, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.  THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  THE RECORDS KEPT BY THE DEBTOR ARE DEPENDENT UPON ACCOUNTING PERFORMED BY THE DEBTOR OR ITS AGENTS.   FOR THE FOREGOING REASON, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY. IN ADDITION TO THIS DISCLOSURE**

**STATEMENT, THE ATTACHED PLAN OF REORGANIZATION SHOULD ALSO BE REVIEWED FOR A BETTER UNDERSTANDING OF THE TREATMENT OF ALL CLASSES OF CREDITORS. THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT AND INCORPORATED HEREIN BY REFERENCE.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE. NO REPRESENTATIONS BY ANY PERSON OR ENTITY CONCERNING THE DEBTOR, IT'S OPERATIONS, FUTURE SALES, PROFITABILITY, VALUES OR OTHERWISE, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT, HAVE BEEN AUTHORIZED.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BELIEVED TO BE CORRECT AT THE TIME OF THE FILING OF THIS DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATION, OR INDUCEMENT MADE TO SECURE OR OBTAIN ACCEPTANCES OR REJECTIONS OF THE PLAN WHICH ARE, OTHER THAN, OR ARE INCONSISTENT WITH, THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT OR OTHER MATERIALS AUTHORIZED TO BE TRANSMITTED BY THE BANKRUPTCY COURT SHOULD NOT BE RELIED UPON BY ANY PERSON IN ARRIVING AT A DECISION TO VOTE FOR OR AGAINST THE PLAN. ANY SUCH ADDITIONAL INFORMATION, REPRESENTATIONS, AND INDUCEMENTS SHOULD BE IMMEDIATELY REPORTED TO THE ATTENTION OF THE DEBTOR AND THE BANKRUPTCY COURT.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS ADMISSION OF ANY FACT OF LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO THE HOLDERS OF CLAIMS AGAINST, OR EQUITY INTEREST IN, LOONEY RICKS KISS ARCHITECTS, INC, THE DEBTOR OR DEBTOR-IN-POSSESSION IN THIS CASE.**

Except with respect to the projections and except as otherwise specifically and expressly indicated herein, this Disclosure Statement does not reflect any events that may occur subsequent

3

to the date hereof and that may have a material impact on the information contained in this

Disclosure Statement. The Debtor does not intend to update the Projections. Nor does the Debtor

anticipate that any amendments or supplements to this Disclosure Statement will be distributed

to reflect such occurrences, unless otherwise ordered by the Bankruptcy Court. Accordingly, the

delivery of this Disclosure Statement shall not under any circumstance imply that the

information contained therein is correct or complete as of any time subsequent to the date hereof

> THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN
> PROVISIONS OF THE PLAN, CERTAIN STATUTORY PROVISIONS,
> CERTAIN RELATED DOCUMENTS, CERTAIN EVENTS, AND CERTAIN
> FINANCIAL INFORMATION.  WHILE THE DEBTORS BELIEVE THAT
> THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND
> ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT
> THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH
> DOCUMENTS OR STATUTORY PROVISIONS.  EXCEPT AS OTHERWISE
> SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS
> DISCLOSURE STATEMENT HAS BEEN PROVIDED BY A REVIEW OF
> THE CERTAIN PARTS OF THE RECORD IN THE CASE AND BY CERTAIN
> PERSONS HAVING A FAMILIARITY WITH THE DEBTOR'S BUSINESS.
> CERTAIN OF THE FINANCIAL INFORMATION CONTAINED HEREIN
> HAS NOT BEEN SUBJECT TO AN AUDIT.  NEITHER THE DEBTOR NOR
> COUNSEL FOR THE DEBTOR IS ABLE TO WARRANT OR REPRESENT
> THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE
> FINANCIAL INFORMATION, IS WITHOUT ANY INACCURACY OR
> OMISSION.

On August 11, 2010, after notice and a hearing, the Bankruptcy Court approved this

Amended Disclosure Statement as containing "adequate information" (as defined in 11 U.S.C. §

1125) of a kind and in sufficient detail to enable a hypothetical, reasonable investor typical of

Creditors in Impaired Classes to make informed judgments about the Plan. The Bankruptcy

Court's Order Approving this Disclosure Statement (the "Order Approving Disclosure Statement

and Scheduling Confirmation Hearing") will be attached as **Exhibit H** to this Disclosure

Statement. In that Order the Bankruptcy Court also (i) approved the solicitation materials and the

procedures for distributing such materials, (ii) approved the form and manner of notice of the

Confirmation Hearing, (iii) established the Voting Record Date, (iv) approved the forms of

ballots, (v) established the deadline for submitting ballots on the Plan, (vi) approved the

procedures for the tabulation of votes, and (vii) scheduled the Confirmation Hearing for October

20, 2010 at 10:00 A.M. in courtroom 645, 200 Jefferson, Memphis, Tennessee.

## II.

## <u>VOTING PREREQUISITES AND PROCEDURES</u>

As a Creditor or interest holder, your vote is important. The Plan can be confirmed by the

Court if it is accepted by each impaired Class.  An impaired Class accepts if the holders of two-

thirds (2/3) in amount and more than one-half (1/2) in number of claims whose votes are

received from that class vote in acceptance of the Plan.  Under certain circumstances more fully

described in 11 U.S.C. § 1129(b), the Court may confirm a plan notwithstanding the rejection

thereof by one or more impaired classes. The Debtor intends to seek confirmation under 11

U.S.C. § 1129(b) in the event any class of creditors rejects the Plan.  Whether a creditor or

interest holder votes on the Plan or not, such person will be bound by the terms and treatment set

forth in the Plan if the Plan is accepted by the requisite majorities of classes of creditors and

interest holders and/or is confirmed by the Court.  Absent some affirmative act constituting a

vote, such creditor or interest holder will not be included in the vote.  Allowance of a claim or

interest for voting purposes and disallowance of any claim or interest for voting purposes does

not necessarily mean that all or a portion of the claim or interest will be allowed or disallowed

for distribution purposes.

The purpose of this statement is to provide the holders of claims against or interests in the

Debtor with adequate information about the Debtor and the Plan to make an informed judgment

when voting on the Plan.

A.      **Persons Entitled to Vote on the Plan.**

1.      <u>Impaired Classes Entitled to Vote on the Plan</u>

Pursuant to the Bankruptcy Code, only Classes of Claim and Interests that are Impaired under the terms and provisions of the Plan are entitled to vote to accept or reject the Plan. Classes of Claims and Interests that are not Impaired are not entitled to vote on the Plan and are deemed to have accepted the Plan. Impaired Classes of Claims or Interest that receive no distributions under the Plan are not entitled to vote on the Plan and are deemed to have rejected the Plan. The Classes of Claims and their status as impaired or not are shown below:

<u>CLASS 1</u>.      <u>Administrative Claims</u>.  Not impaired.

<u>CLASS 2A</u>      <u>Secured Claim of Iberia Bank</u>. Impaired

<u>CLASS 2B</u>      <u>Secured claim of Bank of Jackson</u> Impaired

<u>CLASS 3</u>.      <u>Priority Wage claims</u>.   Impaired

<u>CLASS 4</u>.      <u>Priority Tax Claims</u>.  Impaired

<u>CLASS 5</u>A      <u>Pre-Petition Pay When Paid Consultants</u>.  Not Impaired

<u>CLASS 5B</u>      <u>Post-Petition Pay When Paid Consultants</u>.  Not Impaired

<u>CLASS 6</u>.      <u>Administrative Convenience Class</u>.  Impaired

<u>CLASS 7</u>.      <u>Unsecured Claims</u>.  Impaired

<u>CLASS 8</u>.      <u>Equity Interests</u>. Impaired

2.      <u>Claims Eligible to Vote</u>

Any holder of a Claim in an Impaired Class at 5:00 p.m. CDT on August 23, 2010, the Voting Record Date, whose Claim has not previously been disallowed by the Bankruptcy Court is entitled to vote if and only if either (i) such holder's Claim has been Scheduled by the Debtor and is not a Disputed, Contingent or Unliquidated Claim or (ii) a proof of claim was filed and

neither the Debtor nor any other party in interest has filed an objection to such asserted claim or such asserted claim has been Allowed by a Final Order. Accordingly, any Claim as to which an objection has been filed is not entitled to vote unless the Bankruptcy Court, after notice and a hearing, temporarily allows such Claim pursuant to 11 U.S.C. § 502 and FED. R. BANKR. P. 3018 in an amount that Bankruptcy Court deems proper for the purpose of voting to accept or reject the Plan. Thus, although the holders of Disputed Claims may receive ballots, these ballots will not be counted unless such Disputed Claims are Allowed temporarily for voting purposes by the Bankruptcy Court.  Further, a vote may be disregarded if the Bankruptcy Court determines that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Only holders of Allowed Claims or Allowed Interests in Impaired Classes as of the Voting Record Date are eligible to vote on the Plan. Entities that acquire Allowed Claims after the Voting Record Date will not be entitled to vote on the Plan, but, if they hold such Claims on the Distribution Record Date (or are otherwise lawfully entitled to receive distributions under the Plan in respect of such Claims) they will be entitled to receive distributions under the Plan.

**B.    Voting Instructions**

A ballot to be used for voting to accept or reject the Plan is enclosed with all copies of this Disclosure Statement that are transmitted to Creditors in Impaired Classes. A ballot shall not constitute and shall not be deemed to constitute a filed proof of claim or proof of interest or an amendment to a filed proof of claim or proof of interest.

**IN ORDER TO BE COUNTED FOR VOTING PURPOSES, BALLOTS MUST BE MARKED, SIGNED, DATED AND RETURNED SO THAT THEY ARE STAMPED AS HAVING BEEN RECEIVED BY NO LATER THAN FIVE O'CLOCK (5:00) P.M., CENTRAL DAYLIGHT TIME ON OCTOBER 8, 2010, AT THE FOLLOWING ADDRESS AS SET FORTH ON THE ENCLOSED RETURN ENVELOPE:**

7

**HARRIS SHELTON HANOVER WALSH
2700 ONE COMMERCE SQUARE
MEMPHIS, TENNESSEE 38103**

**ATTENTION: JOHN L. RYDER**

**VOTES MAY BE TRANSMITTED BY FAX, MAIL OR OVERNIGHT COURIER. THIS IS NOT A PROXY SOLICITATION.  CREDITORS IN IMPAIRED CLASSES ARE REQUIRED TO MARK THEIR BALLOT TO INDICATE THEIR VOTES.  BEFORE COMPLETING A BALLOT, CREDITORS IN IMPAIRED CLASSES ELIGIBLE TO VOTE ON THE PLAN ARE ADVISED TO READ CAREFULLY THE INSTRUCTION SHEET THAT ACCOMPANIES THE BALLOT. IF THE BALLOT IS NOT PROPERLY COMPLETED, MARKED, SIGNED, DATED, RETURNED AND TIMELY RECEIVED, IT MAY NOT BE COUNTED. CREDITORS MUST VOTE ALL CLAIMS IN A PARTICULAR CLASS IN THE SAME WAY (*i.e.* ALL "ACCEPT" OR ALL "REJECT"). IF A BALLOT IS DAMAGED OR LOST, OR THE RECIPIENT THEREOF HAS ANY QUESTIONS CONCERNING VOTING PROCEDURES, SUCH RECIPIENT SHOULD CONTACT THE ATTORNEY FOR THE DEBTOR: JOHN L RYDER, HARRIS SHELTON HANOVER WALSH, 2700 ONE COMMERCE SQUARE, MEMPHIS, TENNESSEE, 38103.  ONCE SUBMITTED, A BALLOT ACCEPTING THE PLAN CANNOT BE CHANGED OR WITHDRAWN EXCEPT FOR CAUSE SHOWN TO THE BANKRUPTCY COURT WITHIN THE TIME SET FOR VOTING ON THE PLAN.  BALLOTS OF CREDITORS IN IMPAIRED CLASSES THAT ARE SIGNED AND RETURNED BUT THAT DO NOT EXPRESSLY PROVIDE A VOTE EITHER FOR ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE COUNTED AS ACCEPTANCES.**

### III.

### <u>THE CHAPTER 11 CASE</u>

**A.     Events Leading to Commencement of the Chapter 11 Case.**

On February 23, 2010, (the "Petition Date"), the Debtor filed a voluntary petition in the United States Bankruptcy Court for the Western District of Tennessee for relief under Chapter 11 of the Bankruptcy Code.  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its business and manage its properties as Debtor-in-possession.

LRK is a multi-discipline, award winning architectural firm providing design services for a vast array of clients and building types across the United States.

8

It had offices in Memphis and Nashville, Tennessee, Princeton, New Jersey, Dallas, Texas, Jacksonville and Celebration, Florida and Baton Rouge, Louisiana.

The Debtors decision to commence this Chapter 11 reorganization case was based on several factors and only after careful deliberations of all alternatives. During the 26 months prior to filing Chapter 11, the Debtor experienced a significant reduction in business opportunities. The following points chronologically outline the events leading up to the decision to file:

- The Debtor experienced steady growth in its business from 2002 through 2007 growing from a staff of 110 in four offices to a staff of approximately 240 located in nine offices. The office and support infrastructure was in place for approximately 280 staff members.

- During this time, the Debtor's primary business was the planning and design of private sector projects for private sector developer clients. Many of these projects include some form of residential units.

- In early 2008, the retraction of the single family and then the multifamily residential markets began to impact the firm's backlog. The staff count of the firm was reduced to approximately 150 between July and September 2008 and the Debtor closed its Boulder office.

- As the credit markets began to tighten up, more projects of all types were being delayed or placed on hold. The salaries of all staff members were reduced in November 2008.

- As the credit markets continued to worsen, projects were abandoned and new opportunities became more difficult to find within the Debtors areas of expertise. In the first quarter of 2009, the Debtor reduced its number of employees to approximately 100 and vacation time was reduced for all staff.

- In the second quarter of 2009, the Debtor negotiated reduced rents in several offices and implemented additional salary reductions.

- During July, 2009, the Debtor closed its offices in Jacksonville, Dallas and Rosemary Beach.  Staff was reduced to approximately 60.  Salaries were again reduced for all staff.  The credit line with the Debtor's bank was not renewed.

- In the fourth quarter 2009, benefits and salaries were reduced for all staff.

- January 2010, the Debtor reduced staff again to 46 and closed the Nashville office.

The Debtor attempted to reduce personnel and corresponding overhead cost as the workload declined over the 26 month period.  The severity and pace of the market contraction was deeper and faster than the Debtor could manage to reduce the infrastructure cost.  In addition, a number of the Debtor's clients were caught in the same market forces and the Debtor found a number of clients with good payment histories begin to be slow and/or default in payment.  The Debtor came to the conclusion that the only way to realize the remaining value of the business was to radically restructure.

**B.      Summary of Relief Obtained at Beginning of Case.**

1.    <u>First Day Orders</u>

In the first days following the filing of the Chapter 11 case, the Debtor filed several motions seeking entry of "First Day Orders" designed to ensure as smooth a transition of the business into its role as debtor-in-possession.   Among these, First Day Orders were the following:

  a.   The maintenance of the Debtor's bank accounts and operation of its cash management system through consultation with the Office of the U.S. Trustee in substantially the same state as it existed on the Petition Date;

  b.   The payment of employees' accrued prepetition wages and

    c.  The filing of a motion for use of cash collateral, providing adequate protection to Iberia Bank for use of cash collateral, requesting approval of debtor-in-possession financing for operations through Iberia Bank, modifying the automatic stay and setting a final hearing on the issues.

    d.  Payment of consultants whose contracts require them to be paid when Looney Ricks Kiss receives payment

2.    <u>Appointment of Statutory Committee.</u>  On March 22, 2010, the United States Trustee conducted an organizational meeting to appoint an Official Committee of Unsecured Creditors pursuant to 11 U.S.C. § 1102 (the "Committee"). The United States Trustee appointed the following to the Committee:  Preston Humphreys, Jonathan Gershen, Robert Esposito, and Charles Ferguson.  David Cocke, esq. of the firm of Evans Petree has represented the Committee in the course of this case.

3.    <u>Subcontractor Relationships.</u>  The Debtor has maintained its relationships with its subcontractors. These subcontractors are critical to the ongoing performance of professional duties, the completion of existing contracts, and the collection of outstanding accounts receivable. Pursuant to the orders of the Court of May 17, 2010, the Debtor has been authorized to honor those subcontracts which require the Debtor to pay the subcontractor when the Debtor received payment for the work done by the subcontractors.

4.    The Debtor has remained substantially current with its postpetition trade payables.

5.    <u>Real Property Leases.</u>  The Debtor has rejected its leases in Dallas, Nashville, and Jacksonville. It has modified its leases following rejection of the leases in Memphis and Princeton.  It has assumed its leases in Celebration, Florida and Baton Rouge.

6.    <u>Exclusivity.</u>  The Debtor has filed its Plan within the exclusive period within which only the Debtor may file a Plan.

7.      <u>Employment of Professionals</u>.  Debtor has retained Harris Shelton Hanover Walsh as counsel and Thompson Dunavant as its accountants.

8.      <u>U.S. Trustee Fees</u>: The Debtor shall pay all U.S. Trustee fees required under 23 U.S.C. § 1930(a)(6) and file quarterly financial reports required to be filed by the Office of the United States Trustee. After confirmation of the plan, a financial report shall be filed with the Court and served on the United States Trustee for each quarter (or portion thereof) that the case remains open, in the format prescribed by the United States Trustee.

9.      <u>Sale of Assets.</u>  On May 20, 2010, the Court entered an order approving the sale of certain assets to LRK Inc., a new architectural firm. This sale included those contracts still in the design phase, but not those in the construction phase. In addition, certain intellectual property and furniture and equipment were transferred in accordance with the provisions of the Order Authorizing Sale of Assets.  A copy of the Order is attached as **Exhibit F.**

10.     <u>Corporate Action</u>.  Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving the corporate structure of the Debtor shall be deemed authorized and approved without any requirement of further action by the Debtor, the Debtor's shareholders or the Debtor's board of directors.  The Debtor (and its board of directors) shall dissolve or otherwise terminate its existence on the Effective Date, by filing a certificate of dissolution with the Tennessee Secretary of State, and is authorized to dissolve or terminate the existence of any IRS-qualified retirement plans, employee stock ownership plans, health, medical, welfare, or benefit plans.

## IV.

## **FINANCIAL INFORMATION CONCERNING THE DEBTOR**

A.      **Debtor's Prepetition Business History**

The Debtor was founded December 3, 1983 in Memphis as a general practice architecture firm.   The firm experienced modest but consistent growth through its first fifteen years of business.   The firm's work was intentionally diverse and ranged from housing to hotels, and from office buildings to banks.    During the nineties, the Debtor began to build a regional and a national reputation for community planning, single family residential and multifamily residential projects.   By 2002, the Debtor had begun to build its expertise in mixed-use town center type projects which usually included planning and one or all of the following architectural components: residential, retail, and office.   The Debtors expertise in the mixture of these particular project types led to substantial growth in the firm from 2002 until 2008. The Debtor added staff and offices in an effort to better service clients and/or to attract the appropriate staff needed to deliver the professional services.

Around 2008, the market for housing began to falter and was soon followed by retail and office.   The ensuing credit crisis made financing increasingly difficult for Debtor's private developer clients to obtain.   The current recession has created what is being considered by some as the worse private financing market since 1942.   The architecture profession has been significantly impacted and the Debtor is no exception.   Over the past two years, numerous projects have been abandoned and many clients have either suspended or abandoned their development operations.    The diversity of the Debtor's project type expertise has proven beneficial in past recessions as the different project type markets were off cycle from one

another.  In the current recession, virtually every project type market that the Debtor serves has been severely and simultaneously impacted.

The Debtor had built an infrastructure of offices, information technology, furniture and equipment to accommodate approximately 280 people.  As the Debtors markets collapsed, they closely monitored the revenues and profitability.  In early 2008, the debtor began taking actions to "right size" the staff and overhead to the available revenue.  The Debtor could not foresee the length and severity of the downturn.  Additional and frequent adjustments were made as the economy contracted and the Debtors workload contracted.  The severity and duration of the recession caused elevated competition in the architectural marketplace driving down fees and profitability for what work opportunities that did exist.   The Debtor attempted to negotiate reductions with landlords, equipments vendors and service providers with some success but it was not enough.  Eventually, in January 2010, it became obvious to the senior management of the Debtor that the financial commitments that had been made by the Debtor for the infrastructure of a 280 person firm could not be supported by the output of what had become a 60 person firm and that prompt action through the Bankruptcy Court was needed to maximize the remaining value of the Debtor to its creditors and shareholders.

**B.    Debtor's Assets and Liabilities**

The Debtor's principal assets consist of ongoing contracts for architectural services, accounts receivable and a copyright infringement claim along with a limited amount of furniture and equipment.

1.    Assets

The specific assets owned by the Debtor as of the date of this Plan are as follows:

a.    Contracts, as set forth on Attached **Exhibit B**.

14

  b.  Accounts Receivable

  c.  Infringement Claims

  d.  FF&E

  e.  Cash on hand

  f.  Tax Refund

2.  <u>Liabilities</u>.

  *a.*  *The Debtor's Claim Calculations.*  The Debtor's liabilities are categorized and prioritized in accordance with the classification of claims in the Plan:

| | | |
|---|---|---:|
| 1. | Administrative Claims | $50,000 |
| 2A. | Secured Claim of Iberia Bank | $530,000 |
| 2B. | Secured Claim of Bank of Jackson | $30,000 |
| 3. | Pre-petition Wage Claims | $101,000 |
| 4. | Priority Tax Claims | $1,000 |
| 5A. | Pre-petition Pay when Paid Consultants | $130,000 |
| 5B. | Post-petition Pay when Paid consultants | $150,000 |
| 6. | Administrative Convenience Class | $20,000 |
| 7. | Unsecured Claims | $1,300,000 |
| 8. | Equity Interests | 0 |
| | **TOTAL CLAIMS** | **$2,312,000** |

  *b.*  *Filed Proofs of Claim.*  The Court set June 17, 2010, as deadline for filing a proof of claim for creditors other than governmental units, and the deadline for governmental creditors to file proofs of claim is August 23, 2010.  Additionally, certain

creditors are permitted to file proofs of claim for damages arising out of the rejection of unexpired leases and executory contracts. Several creditors have filed proof of claims but otherwise the schedules represent the claim allowed until and unless a proof of claims is filed by a creditor.

        *c.*     *Proof of Claims Arising out of the Rejection of Unexpired Leases and Executory Contracts.*  All contracts and leases not assumed by the Debtor prior to the Effective Date will be treated in accordance with the provisions of 11 U.S.C. §§ 365 and 502 of the Bankruptcy Code.  Creditors who hold claims for damages arising out of the rejection of an executory contract or unexpired lease must file a Proof of Claim on or before thirty (30) days after the later to occur: (1) the Effective Date, or (2) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or unexpired lease.

        *d.*     *Objection to Claims.*  The Debtor shall have the exclusive right to object to the allowance of any Claim (other than the Claim of Iberia, the same having been previously waived) and the right is reserved for claims filed after the Confirmation Date. Subject to being extended by the Bankruptcy Court upon motion of the Debtor, objections to Claims, if any, shall be filed by the Debtor no later than 60 days after the Effective Date and served upon the holder of such Claim to which the Debtor has objected.  Unless otherwise ordered by the Bankruptcy Court, objections to Claims may be litigated to judgment, settled, or withdrawn.  The Debtor shall have discretion to determine whether to prosecute objections to the allowance of any Claim.

16

# V.

## SUMMARY OF PLAN OF LIQUIDATION

The Debtor, pursuant to 11 U.S.C. § 1121, 1123 and 1127 and related applicable sections of the Bankruptcy Code, is proposing a plan of liquidation (the "Plan"). The Plan is based upon the Debtor's belief that the interests of the Debtor's creditors and interest holders will be best served if the Plan is approved and repayment of its debts are as set forth in this Plan.

The following summary is a general overview and is qualified in its entirety by, and should be read in conjunction with, the more detailed discussions, information and financial statements and notes appearing elsewhere in this Disclosure Statement and the Plan. All capitalized terms not defined in this Disclosure Statement have the meaning subscribed to such terms in the Plan, or applicable provisions of the Bankruptcy Code. A copy of the Plan is attached hereto as **Exhibit A.**

This Disclosure Statement contains, among other things, descriptions and summaries of the provisions of the Plan being proposed by the Debtor as filed on June 23, 2010, with the United States Bankruptcy Court for the Western District of Tennessee. Certain provisions of the Plan, and thus the descriptions and summaries contained herein, may be the subject of continuing negotiations among the Debtor and various parties have not been fully agreed upon and may be modified. Such modifications, however, will not have a material affect on the distributions contemplated by the Plan.

**General Structure of the Plan**.  LOONEY RICKS KISS ARCHITECTS, INC. as the Debtor and Debtor-in- Possession, is the proponent of the Plan within the meaning of U.S.C. § 1129. The Plan contains separate classes and proposes recoveries for holders of claims against and interest in the Debtor. After careful review of the Debtor's current business operations,

17

estimated recoveries in a liquidation, and the prospects of ongoing business, the Debtor has concluded that the recovery to its creditors will be maximized by the orderly liquidation of the Debtor as contemplated by the Plan. Specifically, the Debtor believes that its business and assets have a significant value that would not be realized in a quick liquidation, such as in a chapter 7 bankruptcy case. According to the valuation analysis prepared by the Debtor, the Debtor believes that the value of its estate is significantly greater in the proposed liquidation plan than in a Trustee driven liquidation.

**Summary of the Plan Structure**. Set forth below is a brief summary of the Plan. The effectiveness of the Plan, thus the consummation of the distributions provided for in the Plan, is subject to a number of conditions precedent. There can be no assurances that these conditions will be satisfied. In addition, the Debtor has reserved the right to amend or modify the Plan.

**<u>Liquidation Trust</u>:** With exception to the assets previously sold by Order of the Court, all remaining assets of the Debtor as of the Effective Date will be transferred to the Liquidation Trust. These assets include accounts receivable having a face value of $4,600,000 believed to be collectible in the amount of $1,500,000. The Liquidation Trust will also retain all cash and deposits. These include cash in the amount of $160,000.

The assets also include certain contracts for construction administration. These contracts are subject to termination at will by the clients and therefore are of unknown value.

In addition, the Liquidation Trust will retain the copyright infringement lawsuit, believed to have significant value, and any and all net proceeds arising from pending litigation and possible future avoidance actions more fully described in the Litigation Disclosures Section. Finally, there is some amount of furniture, fixtures, and equipment, believed to have a value of $10-15,000.

All of the aforementioned assets are subject to continuing perfected, senior liens of Iberia Bank, which shall be retained, and therefore, the liquidation of such assets by the Liquidation Trust will be in accordance with 11 U.S.C. § 1129(b)(2)(A) of the Bankruptcy Code, wherein Iberia Bank's liens will attach to the proceeds of the sale of these assets to the extent of the allowed amount of its claim.

The Liquidation Trust will take title to these assets as of the Effective Date of the Plan and will sell the furniture, fixtures and equipment, collect the accounts, administer the contracts, and pursue the infringement claim and potential avoidance actions.  Transfer of these actions is subject to the provisions of the Final Order Granting Authority to Use Cash Collateral.

The proceeds of this liquidation (after satisfaction of Iberia's Claim) will be paid over to the creditors in accordance with the priorities established under the Plan. A copy of the Liquidation Trust Agreement is attached as **Exhibit G**.

**Debtor Cooperation:**  The Debtor and its principals will cooperate in a timely manner with the Trust, the Trustee, the Creditor's Committee, and their professionals in the discharge of its duties under the Plan and Liquidation Trust Agreement, including with regard to any reasonable requests for documents and information.  Also, the Debtor and its principals, as the case may be, will reasonably cooperate with the Trust with respect to reasonable requests for documents and information in its review and collection of accounts receivables, and review of pending litigation and potential preference claims and avoidance actions.

# VI.

## TREATMENT OF CREDITORS UNDER THE PLAN

**Summary of Treatment of Claims and Interests under the Plan**.  The following summarizes the classification and treatment of the principal prepetition claims and interests addressed in the Plan. Classification and treatment for all classes is described in more detail in the Plan and reference is made thereto. Following also sets forth the Debtor's estimate of the amount of claims that will ultimately be allowed in each class based upon a review by the Debtor of the claims scheduled by the Debtor, consideration of the provisions of the Plan that affect the allowance of certain claims, and a general estimate of the amount by which allowed claims may ultimately exceed the amount of claims scheduled by the Debtor. The following also includes estimated recoveries for the holders of claim in each class. For purposes of estimating the percentage of recoveries set forth below, the Debtor has analyzed the assets and liabilities of the Debtor based upon the liquidation value of the assets set forth on **Exhibit C.**

The valuation assumptions include, among other things, an assumption that the recoveries projected for the Liquidation Trust will be achieved in all material respects; however, no assurance can be given that the projected results will be achieved. To the extent that the valuation assumptions are dependent upon the achievement of results projected by the Debtor, the valuation assumptions must be considered speculative.

In addition, in certain classes of claims, the actual amounts of allowed claims could materially exceed or could be materially less than the estimated amounts set forth below. Accordingly, no representation can be or is being made with respect to whether the estimated percentage of recoveries shown below will actually be realized by the holders of allowed claims in a particular class.

CLASS 1.       Administrative Claims. Estimated claims in this class $50,000.   These claims will be paid in cash on the Effective Date of the Plan confirmation.

CLASS 2A.    Secured Claim of Iberia Bank. Estimated claims in this class $1,300,000. These claims will be paid from the proceeds of liquidation of assets, collection of accounts receivable and recoveries from litigation until paid in full.

CLASS 2B.    Secured claim of Bank of Jackson.  Estimated claims in this class $30,000. These claims will be paid from the income or proceeds of liquidation of its interest in the collateral securing said claim. Any remaining balance shall be classified as a General Unsecured Claim.

CLASS 3.  Priority Wage Claims. Estimated claims in this class $101,000.  These claims will be paid in cash thirty (30) days after the Effective Date.

CLASS 4.  Priority Tax Claims. Estimated claims in this class $1,000.  The allowed claims in this class will be paid in full on the Effective Date.

CLASS 5A.   Pre-Petition Pay when Paid Consultants.  Estimated claims in this class $130,000.  Because these claims are only paid when debtor is paid, there is no excess liability to the debtor.  These claims will be paid in accordance with the terms of the contracts as authorized by the Court's Order of May 17, 2010.

CLASS 5B.    Post-Petition Pay when Paid Consultants.  Estimated claims in this class $150,000.  Because these claims are only paid when debtor is paid, there is no excess liability to the debtor.  These claims will be paid in accordance with the terms of the contracts

CLASS 6.  Administrative Convenience Class. Estimated claims in this class $20,000. Claims in this class include all Allowed Unsecured Claims of $1,000 or less along with those claims greater than $1,000 whose holders choose to reduce their claims to $1,000.  The allowed

claims in this class will be paid in full thirty days (30) after the Effective Date and prior to any distribution to Class 7 Claims.

CLASS 7.  Unsecured Claims. Estimated claims in this class $1,300,000.  These claims will be paid, pro rata, from Available Cash annually, within thirty (30) days after the end of the Debtor's fiscal year and each year, until all claims in this class have been paid in full, or there are no more assets to be distributed.  This class may be paid prior to year-end if funds are available.

CLASS 8.  Equity Interests.  Equity interest holders will retain all rights and shall be paid any surplus from Available Cash, after payment in full of all prior Classes.  Once distribution is made to this class, the shares will be cancelled.

## VII.

## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor believes that the Plan affords the holders of Claims and Interests the potential for the greatest realization of value from the Debtor's assets and, therefore, is in the best interest of such holders. If the Plan is not confirmed, however, the theoretical alternatives include (a) continuation of the pending Chapter 11 case; (b) an alternative plan or plans of reorganization; or (c) the liquidation of the Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Code.

**A.**     **Continuation of the Bankruptcy Case**.  If the Debtor remains in Chapter 11, it could continue to operate its business and manage its properties as debtor-in-possession, however, its assets would remain subject to the jurisdiction of the Bankruptcy Court and provisions of the Bankruptcy Code. It is unlikely that the Debtor could survive operating as a Chapter 11 debtor.

**B.**     **Alternative Plans of Reorganization**.  If the Debtor's Plan is not confirmed, the Debtor or, after the expiration of the Debtor's exclusive period in which to propose and solicit a

22

reorganization plan, any other party in interest of the Chapter 11 case could propose a different plan or plans. Such plans might involve either a reorganization or continuation of the Debtor's business or an orderly liquidation of its assets or a combination of both.

      **C.**      **Liquidation under Chapter 7**.  If no plan is confirmed, the Debtor's Chapter 11 case may be converted to a case under Chapter 7 of the Bankruptcy Code.  In a Chapter 7 case, a Trustee would be appointed to liquidate the assets of the Debtor. It is impossible to predict the funds that would be received from a liquidation of the Debtor's assets or to predict a distribution to the respective holders of Claims against or Interests in the Debtor. The Debtor does, however, believe that creditors would lose substantially higher value from an orderly liquidation if the Debtor is forced to liquidate in Chapter 7 which is reflected in liquidation summary as **Exhibit C**.  In addition, the Debtor believes that in liquidation or Chapter 7, before creditors receive any distribution, additional administrative expenses involved in the appointment of a Trustee and attorneys, accountants and other professionals to assist the Trustee would cause a substantial diminution in value of the estate.  The assets available for distribution to creditors would be reduced by such additional expenses and by claims, some of which would be entitled to priority, which would arise by reason of liquidation and from the rejection of leases and other executory contracts in connection with the cessation of operations and the failure to realize the greater orderly liquidation value of the Debtor's assets.

      The Debtor has prepared a liquidation analysis which is premised upon a hypothetical liquidation in a Chapter 7 case and is attached hereto as **Exhibit C**.  In the analysis, the Debtor has taken into account the nature, status and underlying value of its assets, the realizable assets of its assets, and the extent to which such assets are subject to any liens and security interests.  The likely form of any liquidation will be the sale of individual assets. Based on this analysis, it is

likely that a Chapter 7 liquidation of the Debtor's assets would produce less value for distribution to creditors than that recoverable in each instance under the Plan. In the opinion of the Debtor, the recoveries projected to be available in a Chapter 7 liquidation are not likely to afford the holders of claims and holders of interests as great a reorganization potential as the Plan.

## VIII.

### FEASIBILITY OF PLAN AND BEST INTEREST OF CREDITORS TEST

**A.** **Feasibility of the Plan**.  To confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This requirement is imposed by § 1129(a)(11) of the Bankruptcy Code and is referred to as the "feasibility" requirement.  Since this is a liquidation Plan, the feasibility is self evident. Accordingly, the Debtor believes that the Plan satisfies the feasibility requirement of Section 1129(a)(11) of the Bankruptcy Code. As noted in the projections, however, the Debtors caution that no representations can be made as to the accuracy of the projections or as to the Reorganized Debtor's ability to achieve the projected results. Many of the assumptions upon which the projections are based are subject to uncertainties outside the control of the Debtor. Some assumptions will not materialize, and events and circumstances occurring after the date on which the projections were prepared may be different than those assumed or may be unanticipated, and may adversely affect the Debtor's financial result.  Therefore the actual results can be expected to vary from the projected results and the variations may be material and adverse.

THE PROJECTIONS WERE NOT PREPARED WITH A VIEW TOWARD COMPLIANCE WITH THE GUIDELINES ESTABLISHED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, THE PRACTICES RECOGNIZED TO BE IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES, OR THE

RULES AND REGULATIONS OF THE SECURITIES AND EXCHANGE COMMISSION REGARDING PROJECTIONS. FURTHERMORE, THE PROJECTIONS HAVE NOT BEEN AUDITED BY THE DEBTOR'S INDEPENDENT ACCOUNTANTS. ALTHOUGH PRESENTED WITH NUMERICAL SPECIFICITY, THE PROJECTIONS ARE BASED UPON A VARIETY OF ASSUMPTIONS, SOME OF WHICH IN THE PAST HAVE NOT BEEN ACHIEVED AND WHICH MAY NOT BE REAL IN THE FUTURE, AND ARE SUBJECT TO SIGNIFCIANT BUSINESS, ECONOMIC AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE CONTROL OF THE DEBTOR. CONSEQUENTLY, THE PROJECTIONS SHOULD NOT BE REGARDED AS A REPRESENATATION OF WARRANTY BY THE DEBTOR, OR ANY OTHER PERSON, THAT THE PROJECTIONS WILL BE REALIZED. ACTUAL RESULTS MAY VARY MATERIALLY FROM THOSE PRESENTED IN THE PROJECTIONS.

      **B.**     **Acceptance of the Plan**. As a condition to confirmation, the Bankruptcy Code requires that each Class of Impaired Claims and Interests vote to accept the Plan, except under certain circumstances. Section 1126(c) of the Bankruptcy Code defines acceptance of the Plan by Class of Impaired Claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the claims in that Class, but for that purpose counts only those who actually vote to accept or reject the Plan. Thus, a Class of claims will have voted to accept the Plan only if two-thirds in account and the majority number actually voting cast their ballots in favor of acceptance. Under Section 1126(d) of the Bankruptcy Code, a Class of Interests has accepted the Plan if holders of such interest holding at least two-thirds in amount actually voting have voted to accept the Plan. Holders of claims or interests who fail to vote are not counted as either accepting or rejecting the Plan.

      **C.**     **Best Interest Test**. Even if a Plan is accepted by a class of holders of claims and interests, the Bankruptcy Code requires a Bankruptcy Court to determine that the Plan is in the best interest of all holders of claims and interests that are impaired by the Plan and have not accepted the Plan. The "best interest" test, as set forth in § 1129(a)(7) of the Bankruptcy Code, requires a Bankruptcy Court to find either that (i) all members of an impaired class or claims of interests have accepted the Plan or (ii) the Plan will provide a member who has not accepted the

Plan with the recovery of property with a value, as of the Effective Date of the Plan, that is not

less than the amount that such holder would recover if the Debtor were liquidated in a Chapter 7

of the Bankruptcy Code.

To calculate the probable distribution to members in an impaired class of holders of

claims and interests if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must

first determine the aggregate dollar amount that would be generated from the Debtor's assets if

its Chapter 11 case were converted to a Chapter 7 case under the Bankruptcy Code. This

"liquidation value" would consist primarily of the proceeds from a forced sale of the Debtor's

assets by a Chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by,

first, the claims of secured creditors to the extent of the value of their collateral, and, second, by

the costs and expenses of liquidation as well as by other administrative expenses and costs of

both the Chapter 7 case and the Chapter 11 case.  As a general matter, a liquidation under

Chapter 7 will not affect the rights of certain sureties who posted bonds that the Debtor

purchased for various business, litigation, and other reasons. Cost of liquidation under Chapter 7

of the Bankruptcy Code would include the compensation of a trustee, as well as counsel and

other professionals retained by the trustee, asset disposition expenses, all unpaid expenses

incurred by the Debtor in its bankruptcy case (such as compensation of attorneys, financial

advisors and accountants) that are allowed in the Chapter 7 case, the litigation costs, and claims

arising from the operations of the Debtor during the pendency of the bankruptcy case. The

liquidation itself would trigger certain priority payments which otherwise would be due in the

ordinary course of business. These priority claims would be paid in full from the liquidation

proceeds before the balance would be made to pay the general unsecured claims or to make any

distribution in respect to equity interests. Liquidation also would prompt the rejection of a large number of executory contracts and unexpired leases and thereby creating a significantly higher number of unsecured claims.

Once the Court ascertains the recoveries in liquidation of secured creditors and priority claimants, it must determine the probable distribution to unsecured creditors and equity security holders from their remaining available proceeds in liquidation. This such probable distribution has a higher value than the distributions to be received by such creditors and equity security holders under a debtor's plan, then such plan is not in the best interest of creditors and equity security holders.

D.     **Estimated Valuation of the Debtor and Liquidation Analysis**. A copy of the liquidation analysis prepared by the Debtor is attached as **Exhibit C** to this Disclosure Statement. The Debtor believes that any liquidation analysis is speculative. For example, the liquidation analysis necessarily contains an estimate amount of claims which ultimately will become allowed claims. In preparing the liquidation analysis, the Debtors have projected the amount of claims based upon a review of their scheduled and filed proofs of claim. No order or finding has been entered by the Bankruptcy Court estimating or otherwise fixing the amount of claims at the projected amount of claims set forth in the liquidation analysis. In preparing the liquidation analysis, the Debtor has projected a range for the amount of the allowed claims with the low end of the range the lowest reasonable amount of claims and the high end of the range the highest reasonable amount of the claims, thus allowing assessment of the most likely range of Chapter 7 liquidation dividends to the holders of allowed claims. The estimate of the amount of allowed claims as set forth in the liquidation analysis should not be relied upon for any other purpose, including without limitation, any determination of the value of any distribution to be

made on account of allowed claims and interests under the Plan. In addition, as noted above, the liquidation analysis contains numerous estimates and assumptions.

IX.

## LITIGATION DISCLOSURES

**A.    Avoidance Actions**.

Pursuant to Bankruptcy Code §§ 547 and 550, transfers made to or for the benefit of a creditor for or on account of an antecedent debt on or within ninety (90) days before the petition date (or within one year of the petition date in the case of an insider of the Debtor) may be avoided as preferential transfers and recovered by the Debtor subject to certain defenses available to such creditor (or insider) under the Bankruptcy Code. Additionally, the fixing of a lien against property of the Debtor may constitute a transfer of an interest in property and the fixing of such lien on account of an antecedent debt within the applicable preference period may be avoided.

The Debtor made transfers to creditors on or within ninety (90) days before the Petition Date. Some of these transfers may constitute preferential transfers that are avoidable.

**B.    Pending Litigation Against the Debtor**.

The Debtor is involved in various litigation and any claimant is in the unsecured class. **Exhibit D** attached hereto describes in table format, all litigation involving the Debtor and of which the Debtor is currently aware.

**C.    Pending Litigation By the Debtor**.

The Debtor is plaintiff in certain copyright infringement litigation, described in **Exhibit E** and which constitutes one of the principal assets of the Debtor.

28

**D.      Summary.**

Except as previously waived or released in "The Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection Liens", all Avoidance Actions, all Claims relating to post-petition transactions, all transfers recoverable under Section 550 of the Bankruptcy code, all causes of action in favor of the Debtor, and all causes of action against Debtor are preserved and retained exclusively by the Liquidation Trust subsequent to the Effective Date.  Proceeds recovered from such causes of action shall be distributed to creditors in accordance with the provisions of the Plan.

The Liquidation Trust will perform an analysis of potential Avoidance Actions and other causes of action.  To the extent such actions are identified, the Liquidation Trust may pursue such actions by informal demand and/or by the commencement of litigation.  The net proceeds derived from such actions will be distributed to the creditors pursuant to the terms of the Plan.

## X.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, could change the federal income tax consequences of the Plan and the transactions contemplated therein. Furthermore, certain significant federal income tax consequences of the Plan are subject to uncertainties due to the complexity of the Plan and the federal tax system. The Debtor assumes no responsibility for the tax effect that Confirmation and receipt of any distribution under the Plan may have on any given creditor or party in interest.

**THIS DISCLOSURE STATEMENT IS NOT INTENDED TO BE AND SHOULD NOT BE CONSTRUED AS LEGAL OR TAX ADVICE TO ANY CREDITOR OR PARTY IN**

**<u>INTEREST AND SUCH PERSONS ARE STRONGLY ADVISED TO CONSULT THEIR</u>**

**<u>OWN LEGAL OR TAX ADVISORS IF THEY HAVE ONE.</u>**

No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan and none will be sought. Additionally, no ruling or determinations of the Internal Revenue Service or any other taxing authority have been or will be sought. No representations are being made concerning the particular tax consequences of the confirmation and consummation of the Plan to the Debtor or any Claim or Interest Holder.

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR THE HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR. THE DEBTOR STRONGLY RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.**
**EXHIBITS TO THIS DISCLOSURE STATEMENT WILL NOT BE FILED WITH THE DISCLOSURE STATEMENT BUT WILL BE MAILED TO ALL CREDITORS WITH THE MAILING OF THE NOTICE OF HEARING ON DISCLOSURE STATEMENT AND FILED COPY OF DISCLOSURE STATEMENT AS ALLOWED UNDER THE CODE. COUNSEL FOR DEBTOR WILL PROVIDE COPIES OF EXHIBITS TO ANY INTERESTED PARTY UPON WRITTEN REQUEST IN ADDITION TO THE MAILING.**

[This space intentionally left blank]

Respectfully submitted:

LOONEY RICKS KISS ARCHITECTS, INC.

_____/s/ Frank Ricks_____
By:    Frank Ricks
Its:    President

HARRIS SHELTON HANOVER WALSH, PLLC

_____/s/ John L. Ryder_____
John L. Ryder (BPR 8258)
2700 One Commerce Square
Memphis, TN 38103
(901) 525-1455
Attorneys for the Debtor-in-Possession

## CERTIFICATE OF SERVICE

I hereby certify that on or before 26th day of August, 2010, a copy of the foregoing electronically filed Motion and any exhibit attached thereto was served via U.S. mail, postage prepaid or electronic mail upon the United States Trustee, the United States Attorney; all parties who have requested to receive notice in this case; and on all parties listed on the List of 20 Largest Unsecured Creditors for Looney Ricks Kiss Architects, Inc.

_____/s/ John L. Ryder_____
John L. Ryder